ARKANSAS ALCOHOLIC BEVERAGE CONTROL and
Pearcy Grocery, Inc. *v.* Deborah MUNCRIEF

CA 00-721                                         45 S.W.3d 438

Court of Appeals of Arkansas
Division II
Opinion delivered June 13, 2001

*Morely Law Firm*, by: *Stephen E. Morley*; and *Milton Lueken*, for appellant.

*Q.Byrum Hurst, Jr.*, for appellee.

ANDREE LAYTON ROAF, Judge. The Arkansas Alcoholic Beverage Control Board (hereinafter "ABC") and Pearcy Grocery, Inc., (hereinafter "Pearcy Grocery") appeal from an order of the Garland County Circuit Court reversing the granting of a retail off-premises beer permit to Pearcy Grocery. On appeal, they argue that the trial court erred in finding that appellee Deborah

Muncrief had standing to appeal ABC's decision and in determining that ABC's decision to grant the permit was not supported by substantial evidence. We reverse.

Pearcy Grocery applied to ABC for an off-premises beer permit for the convenience store that it operates on Airport Road in the community of Pearcy in Garland County. Objection to Pearcy Grocery's permit request was received in the form of a petition bearing 379 signatures and three letters of opposition. The Alcoholic Beverage Control Division's director denied Pearcy Grocery a permit, and it appealed to the ABC.

At a regularly scheduled monthly meeting of the ABC on April 15, 1998, Curtis Garner, the owner of Pearcy Grocery, described the store as a "market" in which a variety of items were sold, including groceries, gas, feed, snacks, and deli sandwiches. He stated that it was staffed by him, his parents, and a "part timer," and although the store operated 6:00 a.m. to 7:00 p.m. Monday through Friday, 7:00 a.m. to 7:00 p.m. on Saturday and 10:00 a.m. to 4:00 p.m. on Sunday, "someone named Garner" was always on duty in the store. Garner stated that he anticipated that beer sales would complement his current stock. Garner testified that the nearest beer outlet on Airport Road was Rovin Ramblers, which operated as an RV park and package beer store, some 2.4 miles west of his store. East of his store were five other outlets selling beer within ten miles, the closest of which was Miller's Liquor Store. Garner asserted that he submitted a petition signed by more than 300 people who were in favor of his receiving a permit. He stated that his store was "kind of the hub" of the Pearcy community, and it would benefit the community if he had a beer permit.

Joe Goslee, Jr., testified that granting a beer permit to Pearcy Grocery would be a "welcomed addition to the community." He stated that the population is moving west out to this area and that there are a lot of nice homes in the vicinity. Goslee opined that it would be safer if beer was sold in the store because the trip to get a six-pack would be shorter for the people who lived in more remote areas and would not be tempted to start drinking on the return trip.

Ned Bass testified that he lived about three miles from the store and stated that Garner and his family are "fine people" and run an "upstanding business." He stated that if Pearcy Grocery got a beer permit, it would be much more convenient for him to get his gas, chips, and "what not," and also his beer "in one place." He also discounted the validity of the petitions circulated by the opponents

of the permit, claiming that it was his experience that when he put petitions out at his convenience store, people would sign them without reading them simply because they knew him.

Muncrief testified that she owns Miller's Liquor on Airport Road, about three miles east of the proposed location. She stated that she was familiar with the other permits in the area and opined that they adequately served the area. Muncrief stated that she opposed the permit because she feared that Pearcy Grocery would undercut her prices. She stated that the last time a convenience store was permitted in the area it took away a "tremendous" amount of her business. Muncrief stated that with all of the permits on Airport Road, she did not believe that law enforcement could adequately enforce all the regulations. She also introduced a petition signed by fifty-three persons opposing the permit. She claimed that she simply left the petition on the counter for her customers. Muncrief also testified that she had attempted to move her store closer to the county line in 1989 or 1990, and her petition had been denied.

Shirley Janiese, the owner of Rovin Ramblers, testified that she opposed granting the permit because she also feared that Pearcy Grocery could undercut her beer prices. She asserted that it would hurt her business, that there were already a number of existing outlets that adequately served the area, and that the intersection of Pearcy Road and Highway 70 West was not a suitable location for a beer outlet, because if there was a wreck, "it takes a good 20 minutes for the sheriff to get out there." She also had a petition signed by a number of her customers who opposed the granting of the permit.

In addition to the petitions submitted by Muncrief and Janiese, a petition circulated by a local Baptist church was brought before ABC. Also, letters from the Garland County Sheriff and Prosecuting Attorney opposing the permit were entered into evidence.

ABC granted the permit by unanimous vote. In its findings of fact, ABC stated that Mr. Garner appeared to be a "good applicant," that it did not find that the location of the store presented any danger to the customers, that the letter submitted by the Garland County Sheriff opposing the permit did not state that granting the permit would put "undue pressure" on law enforcement, and that Garner deserved a chance to compete with other beer outlets. Under the conclusions of law, it stated that "public convenience

and advantage" would be "promoted and enhanced" by granting the permit.

Muncrief then filed for judicial review in Garland County Circuit Court. In her petition, she stated that she "considers herself injured by the action of the agency" and she alleged that granting the permit was in violation of constitutional or statutory provisions; in excess of the agency's statutory authority; made upon unlawful procedure; affected by other error or law; not supported by substantial evidence of record; and arbitrary, capricious, or characterized by abuse of discretion. Pearcy Grocery successfully moved to intervene, and subsequently moved to dismiss. Citing *Estes v. Walters*, 269 Ark. 891, 601 S.W.2d 252 (Ark. App. 1980), Pearcy Grocery alleged that Muncrief did not have standing to petition for judicial review.

The circuit court denied the motion to dismiss and ultimately reversed ABC's decision granting the permit. In reversing, the circuit court found that ABC based its decision on its factual findings that Garner was a good applicant who deserved the right to compete with other outlets that had beer permits, which was the incorrect test as none of the findings addressed public convenience or advantage. It also found that ABC disregarded the legislature's mandate that the number of permits be limited. The court also found that the record indicates that beer prices are already extremely low in the area where Pearcy Grocery had made its application and there is nothing to indicate that the increased competition created by the granting of another permit would lower prices any further or make new products available. Finally, the court noted that both Pearcy Grocery and the opposition submitted a substantial number of signatures supporting and opposing their respective positions and found that, contrary to the law, ABC failed to focus on the reasons for these endorsements.

ABC first argues that the trial court erred in finding that the appellee had standing to appeal the decision of the ABC board. It contends that the record is void of any evidence that Muncrief has sustained a real, concrete, or specific injury or that she was in immediate danger of sustaining a real, concrete, or specific injury to her person, business, or property as a result of ABC granting the permit to Pearcy, and accordingly, she did not have standing to invoke the jurisdiction of the circuit court. Furthermore, ABC cites *Estes v. Walters, supra*, and asserts that because Muncrief failed to set out in her petition for judicial review in circuit court specific allegations as to how she has sustained or is in immediate danger of

sustaining injury, it was insufficient to invoke the court's jurisdiction under the Administrative Procedures Act, and the circuit court erred in finding that she had standing. We find this argument persuasive.

■ ■ We are mindful of the fact that the Administrative Procedures Act confers standing to seek judicial review of a final agency action on "any person who considers himself injured in his person, business, or property." Ark. Code Ann. § 25-15-212(a) (Repl. 1996). However, to have standing, a petitioner must assert in her pleadings how she has "already sustained or is immediately in danger of sustaining injury either in his 'person, business or property' as a consequence of the final action of [ABC] in issuing the new permit." *Estes v. Walters, supra.*

■ We note that Muncrief argues that the instant case is distinguishable from *Estes* because she appeared at all stages of this proceeding and testified that as a neighboring business owner, she was threatened by increased competition and therefore she had standing because she considered herself to be "injured" by ABC's decision. She urges us to hold that the "general rule" that "emerges" from *Estes* is that "when an individual does not appear in the proceedings below, seeks to appeal a final action under the administrative procedures act, he must set out in his petition how the issuance of the permit will harm him." However, this interpretation cannot be reconciled with the plain wording of *Estes;* the fact that the appellant in *Estes* was not a protestant in the action before the ABC Division Director, was not a dispositive fact in our decision in that case. Accepting Muncrief's interpretation would therefore require us to overrule *Estes,* which we decline to do. Accordingly, we hold that Muncrief failed to establish her standing to seek judicial review of the ABC decision, and therefore, we reverse and dismiss.

Reversed and dismissed.

BIRD and BAKER, JJ., agree.